E-FILED
Friday, 30 July, 2010  02:37:17 PM
Clerk, U.S. District Court, ILCD

**THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION**

_____

| | |
|---|---|
| MARTIN M. WOOLLEY, ) | |
| ) | |
| Petitioner, ) | |
| ) | No. 09-4084-MMM |
| v. ) | |
| ) | |
| DONALD GAETZ, Warden ) | Judge Michael M. Mihm |
| Menard Correctional Center, ) | |
| ) | |
| Respondent. ) | |

_____

**O R D E R**

This is a matter now before the Court on Martin Woolley's ("Woolley") Petition for Writ of

Habeas Corpus pursuant to 28 U.S.C. § 2254.  For the reason's set forth below, Woolley's

Petition [#2] is DENIED.

**BACKGROUND**

At approximately 10 p.m. on February 20, 1995, Rane Baldwin ("Baldwin") and Diana

Turley ("Turley") were found shot to death at Phylly's Cue and Brew tavern ("the tavern") in

Kewanee, Illinois.  Woolley and his wife, Marcia Woolley, had spent much of their day at the

tavern, drinking, playing pool, and talking to other patrons.  Eventually, everyone but the

Woolleys, Baldwin, and Turley had left the tavern.  Woolley initially claimed that he and his wife

left the tavern at 9:25 p.m. but, upon questioning, admitted to killing the two women.  In his

confession, Woolley said that he took a gun out of his pants and shot Baldwin in the head two or

three times before shooting Turley.  Woolley also stated that he proceeded to take the tavern's

cash, and that while he was looting the register, he heard Baldwin stir and shot her again in the

head.

At trial, Woolley retracted his confession and asserted that his wife had killed Baldwin and Turley.  On June 16, 1995, Woolley was convicted of murder in the Circuit Court for Henry County.  He was originally sentenced to death but appealed to the Illinois Supreme Court.  The Supreme Court upheld his convictions of armed robbery, murder, and unlawful possession of a weapon by a felon, but reversed and remanded his death sentence for a new hearing.  A second jury also imposed the death penalty, and Woolley again appealed.  The Supreme Court reversed and remanded his sentence for the second time.  While Woolley was waiting for his third sentencing hearing, then-Illinois Governor George Ryan commuted all death sentences to life imprisonment.  The Illinois Supreme Court interpreted Governor Ryan's action as applying to Woolley's death sentence.

Much of Woolley's trial revolved around where the gunman was located.  Woolley testified that he was in the men's restroom when he heard gunshots and emerged to see his wife, propped up on a barstool, shoot Baldwin a third time as the bartender lay on the ground. Michael Ogryzek ("Ogryzek"), a crime scene investigator for the state, testified that his investigation led him to believe that the shooter had been in the area of the men's restroom for the first three shots and that the final shot to Baldwin had been delivered from behind the bar. Ogryzek also testified that it would have been impossible for Marcia Woolley to fire the final shot from the other side of the bar, where all parties agreed she was located.

On July 16, 1996, Woolley filed a pro se postconviction petition.  He filed another postconviction petition in 2000, but the court stayed proceedings until after the Illinois Supreme Court had concluded all direct appeals.  On July 12, 2006, Woolley amended his petition to include a claim of ineffective assistance of counsel. Although the State filed a motion to dismiss the petition, the trial court denied the motion.  Eugene Stockton ("Stockton"), a Henry County Public Defender, represented Woolley at his initial trial and sentencing.  A State Appellate Defender represented Woolley for his 1996 petition and from 2000 until May 2005, when Woolley employed private counsel.

Stockton testified at the postconviction evidentiary hearing about his involvement in the 1995 trial, including how he handled Ogryzek's testimony. Stockton testified that he had examined Ogryzek's report prior to the expert's testimony and had been assured by Ogryzek that his testimony would not go beyond the report's parameters. On the day of Woolley's trial, however, Stockton received a supplement to Ogryzek's report. This supplement contained conclusions about the gunman's location. Stockton did not pursue funds to hire an expert to rebut Ogryzek's additional testimony or even consider hiring one. Stockton also did not request a continuance or move to bar Ogryzek's untimely addition. Instead, Stockton concentrated his legal efforts on bringing Ogryzek's credibility into question.

In addition to Stockton, Alva W. Busch ("Busch"), a private investigator hired by Woolley, testified at the postconviction hearing. Busch had previously worked for the state police as a crime scene investigator. He testified that he had concluded, based on his experience, that the bullet that had killed Turley had come from the area of Marcia Woolley's barstool, not the bathroom. He also testified that Baldwin had been shot from the same barstool, and that Marcia Woolley would have been able to shoot Baldwin as the bartender lay on the ground from her position in front of the bar.

The trial court ruled that Stockton's assistance was deficient, but concluded that Stockton's ineffective assistance did not prejudice the jury. The trial court concluded that because Woolley had admitted to taking money from the tavern, trying to dispose of evidence, and to being at the tavern at the time of the murder with the murder weapon, that the jury's only decision was whether Woolley's account was credible. The trial judge also found that there was no reasonable probability that Busch's testimony would change a jury's conclusion because Woolley's testimony was internally inconsistent and the theory he presented at trial contradicted the testimony of other witnesses.

The Illinois Appellate Court upheld the trial court's ruling, finding that the trial court was within its power when it determined that the case revolved around Woolley's credibility, not the

gunman's position, and consequently, that the lack of expert testimony supporting Woolley's position did not prejudice the jury.  Additionally, the Appellate Court ruled that the trial judge had the power to determine whether the defense witness was credible.  Finally, the Appellate Court concluded that even if it had reviewed the trial court's decision de novo, it would have arrived at the same conclusion.

Woolley has now filed the present petition, in which he argues that he received ineffective assistance of counsel.  This order follows.

**DISCUSSION**

## I. Procedural Default

A district court must address "whether a petitioner exhausted all available state remedies and whether the petitioner raised all of his federal claims" during his state proceedings before examining the merits of a habeas corpus petition. Farrell v. Lane, 939 F.2d 409, 410 (7th Cir. 1991) (citing Henderson v. Thieret, 859 F.2d 492, 496 (7th Cir. 1988)).  If the petitioner has not presented all of his federal claims in state court or has not exhausted all available state remedies, then the district court is barred from examining his petition. Id.  A petitioner has exhausted his state remedies when the highest court in the state has ruled on his claim or when the argument cannot be brought to the highest court. Bocian v. Godinez, 101 F.3d 465, 468-69 (7th Cir. 1996).

Procedural default prevents the district court from ruling on the petitioner's claim. Procedural default can occur in two ways: 1) the petitioner has not pursued the appeals required by state law, Jenkins v. Gramley, 8 F.3d 505, 507-08 (7th Cir. 1993), or never raised the claim in his habeas petition in state court, Resnover v. Pearson, 965 F.2d 1453, 1458-59 (7th Cir. 1992), or 2) the state court used adequate state law to dispose of the claim. Coleman v. Thompson, 501 U.S. 722, 729 (1991).  Federal courts can only review procedurally defaulted claims if the petitioner demonstrates cause and prejudice, Farrell, 939 F.2d at 4111, or if not

4

reviewing the claim will likely result in the conviction of an innocent person. Schlup v. Delo, 513 U.S. 298, 324 (1995).

Woolley appealed his conviction to the Illinois Supreme Court where it was upheld, and appealed his death sentence to the Illinois Supreme Court twice before it was finally commuted. The Illinois trial and appellate courts considered Woolley's claim of ineffective counsel. Therefore, it is undisputed that Woolley has exhausted all of his state court remedies, and his petition does not suffer from a procedural default.

## II. Ineffective Counsel

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") permits a federal district court to "entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court only" if his confinement violates the Constitution, laws, or treaties of the United States. 28 USCA § 2254(a).  A federal court examines the state court's decision under a reasonableness standard, Ellison v. Acevedo, 593 F.3d 625, 632 (7th Cir. 2010), and can only grant habeas relief if the state court's holding: 1) contradicted or unreasonably applied "clearly established Federal law" or 2) in light of the evidence, was based upon an unreasonable factual determination. Id. (citing Williams v. Taylor, 529 U.S. 362, 376 (2000)).  A determination is contrary to federal law if it contradicts clearly established Supreme Court precedent or if the state court "decides a case differently than [the Supreme Court] has done on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 405 (2000); see also Calloway v. Montgomery, 512 F.3d 940, 943 (7th Cir. 2008).  If a state court "identifies the correct governing legal rule but unreasonably applies it to the facts of a case or if the state court either unreasonably extends a legal principle from the Supreme Court's precedent to a new context in which it should not apply or unreasonably refuses to extend that principle to a new context in which it should apply" then the court's application of law is unreasonable under the AEDPA. Ellison, 593 F.3d at 362.

Woolley asserts that his sentence violates the Sixth and Fourteenth Amendments of the United States Constitution because his counsel provided ineffective assistance during his 1995 trial. The Court uses a two-part test to determine if a counsel's assistance was ineffective. Id. at 363. First, the petitioner must establish "that the counsel's performance was deficient." Strickland v. Washington, 466 U.S. 668, 687 (1984). If the petitioner can show that counsel's assistance was ineffective, then he must also show that "the deficient performance prejudiced the defense." Id. The petitioner must establish both prongs of this test.

The Court is highly deferential in its analysis of counsel's decisions. Strickland, 466 U.S. at 689. In determining whether an attorney's assistance was ineffective, the Court must make every attempt "to eliminate the distorting effects of hindsight." Id. Consequently, Woolley "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy." Id. (citing Michel v. Louisiana, 350 U.S. 91, 101 (1955)). The Court uses "[p]revailing professional norms" to determine whether assistance is deficient or reasonable. Brown v. Finnan, 598 F.3d 416, 422 (7th Cir. 2010). This determination is based on the counsel's overall assistance and not a "specific failing." Id. (citing Pole v. Randolph, 570 F.3d 922, 934 (7th Cir. 2009)).

To show prejudice, the petitioner must establish that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. A reasonable probability rests somewhere between a preponderance of the evidence and "some conceivable effect." Id. 466 U.S. at 693-94. Generally, "[t]he bar for establishing that a state court's application of the Strickland standard was 'unreasonable' is a high one, and only a clear error in applying Strickland will support a writ of habeas corpus." Allen v. Chandler, 555 F.3d 596, 600 (7th Cir. 2009). Essentially, "this Court *is obligated to affirm the district court's decision to deny the writ, so long as the [State] Court of Appeals 't[ook] the [constitutional standard] seriously and produce[d] an answer within the range of defensible positions.*" Murrell v. Frank, 332 F.3d 1102, 1111 (7th Cir. 2003) (citing Mendiola v.

_____, 224 F.3d 589, 591 (7th Cir. 2000)).  As part of this deference, a federal court "MUST" assume *that all factual determinations made by the state courts, including credibility determinations, are correct, unless rebutted by clear and convincing evidence."* Id. (emphasis supplied).

Since the trial court agreed that Stockton's assistance was deficient, Woolley's petition focuses primarily on whether Stockton's failings resulted in prejudice.  Woolley does not offer any evidence or argument that the state court's decision differs from clear Supreme Court precedent.  Instead, Woolley attempts to establish an unreasonable application of law by demonstrating the various ways a defense expert's testimony could have changed the jury's decision.  He argues that there is a reasonable probability that the defense expert's testimony would have changed the outcome of the trial because: 1) Ogryzek's undisputed testimony would have become disputed; 2) it would have provided key corroborating evidence in a case that was largely based on Woolley's credibility; and 3) it would have cast doubt on Woolley's confessions. In making these arguments, Woolley mistakes this Court's role in considering a petition for habeas relief. Id.

The Court "assesses prejudice by reweighing the aggravating evidence against the totality of the . . . evidence." Wiggins v. Smith, 539 U.S. 510, 512 (2003).  This is not a case where the conviction rested solely on Ogryzek's testimony.  Woolley was at the bar at the time of the murders.  Loot from the tavern was hidden in his closet wall.  He asked a friend to toss the murder weapon.  Acquaintances testified that Woolley had made statements about shooting and robbing people.  His signed documents stating that he had killed the women.  Even his confession implicated him in the murders.

Essentially, Woolley's argument is that the Appellate Court came to the wrong conclusion, but the Court need only determine if the state court reasonably applied the law. See Danks v. Davis, 355 F.3d 1005, 1009 (7th Cir. 2004).  This standard of review requires that the state court's decision be "so inadequately supported by the record' as to be arbitrary and

7

therefore objectively unreasonable." Ward v. Sternes, 334, F.3d 696, 704 (7th Cir. 2003) (Citing Halll v. Washington, 106 F.3d 742, 749 (7th Cir. 1997)). Consequently, since the state presented an array of evidence establishing Woolley's guilt in addition to Ogryzek's testimony, this Court cannot determine that the Appellate Court's decision was unreasonable. See Strickland, 466 U.S. at 686 ("The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.")

Woolley proffers several cases in support of his contention. These cases, however, either involve materially distinguishable facts or are from different circuits. These cases do not provide clear and convincing evidence that the State Appellate Court made a baseless determination. Woolley cites Richter v. Hickman for the proposition that, under these circumstances, counsel's actions prejudiced the petitioner. The Seventh Circuit has explicitly distinguished Richter v. Hickman from cases like Woolley's. Wilson v. Gaetz, 2010 WL 2403386. If the state court, as in Richter, did not make a finding as to whether or not the petitioner was prejudiced, then the court can engage in de novo review. Id. In this case, however, the state court did a thorough examination before determining that there was no prejudice. Therefore, the Illinois Appellate Court's decision requires a greater degree of deference. Id.

In his response, Woolley makes a major issue of whether he stated in his confession that he was behind the bar the third time he shot Baldwin. Woolley focuses on this dispute in order to show that Busch's testimony could have undermined his taped confession, and bolstered the reliability of his trial testimony. This argument ignores both the other evidence offered by the state and that the Appellate Court also upheld the finding that Busch's testimony lacked credibility in general. Woolley does not offer any clear and convincing evidence that the credibility determination was in error. Consequently, this Court cannot find that the Appellate Court's determination was unreasonable in this respect. Murrell , 332 F.3d at 1111.

The parties also debate whether or not the state waived the right to claim that Stockton was effective counsel.  The Appellate Court did address this.  <u>Illinois v. Woolley</u>, No. 3-07-0431, slip op. at 7 (Ill. App. Ct. June 24, 2008) ("The State requests this Court to set aside the court's findings and hold that trial counsel was not ineffective.").  However, the State fails to provide sufficient evidence that the Appellate Court's determination on this matter was unreasonable. Additionally, even if this Court were to review the decision <u>de novo</u>, it would conclude that trial counsel's error rendered his performance deficient.  That being said, deficient performance is not the end of the query.  Woolley has failed to demonstrate actual prejudice.  His claim of ineffective assistance therefore fails, and he is not entitled to federal habeas corpus relief.

## CONCLUSION

For the reason's stated herein, Woolley's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 [#2] is DENIED. This matter is now terminated.

Entered this 30th day of July 2010.


<u>Michael M. Mihm</u>
Michael M. Mihm
United States District Judge